law, is induced to confess judgment, by the assurance of the plaintiff's attorney-at-law, that, if he did so, the plaintiff would immediately proceed to levy, by execution, the amount thereof from the maker, who, he assured the defendant, had sufficient property in the county to satisfy the same; and if the plaintiff afterwards refuses so to proceed against the maker, although requested so to do, and the maker becomes insolvent, a court of equity will decree a perpetual injunction.

[See note at end of case.]

2. Quaere? Whether the answer of a corporation aggregate, under its seal, not excepted to, and responsive to the allegations of the bill, is such evidence for the defendant that the court cannot decree against it, unless contradicted by one witness corroborated by others, or by the circumstances of the case.

Bill in equity [by Garey's executrix] for a perpetual injunction, to stay proceedings at law upon a judgment confessed by the defendant at law, the present complainant.

The bill, filed December 2, 1819, states that the complainant's testator was indorser of Merrill's note, discounted by the Union Bank of Georgetown. That, after the testator's death, the complainant was requested, by the attorney-at-law of the bank, to confess judgment on the note, and was assured by him that, "if she did so, and did not dispute her liability on the note, the bank would immediately proceed to levy, by execution, the amount thereof from Merrill, who, he assured her, had sufficient property in the county to satisfy the same," and advised her "that she would thus be saved from her liability for said debt," and "prevailed upon her to make no defence to the suit at law, but voluntarily to confess judgment." That she then had "a valid defence against the said suit, the plaintiff not having made the due and legal demand, and given the due and legal notice, so as to bind the indorser thereon;" "that the said attorney of the bank well knew the same," and made the said propositions to her, to prevent her from contesting the suit. That Merrill had then, and for some time afterwards, in Georgetown, sufficient property to pay the judgment, and that it might have been recovered by execution, which she repeatedly urged the bank to issue, according to the agreement upon which she confessed the judgment. But the bank continued to indulge the said Merrill for a long time, and permitted him to leave the district, and take away with him all his property, and have taken no effective measures to recover the money from him, and he is now insolvent. That the bank threatens to issue execution against the complainant, &c. The prayer of the bill is, "that the said judgment may be opened, and the complainant be permitted to make her defence against the same, or such other order may be taken therein as the court shall direct," and for subpoena and injunction against further proceedings at law, on the judgment against the complainant; and for general relief, "according to law and equity."

The answer of the bank, under its corporate seal, avers that the money was loaned entirely upon the credit of the complainant's testator, Everard Garey. That the judgment was obtained against the complainant at December term, 1817. It denies that the attorney of the bank persuaded the complainant to confess the judgment, and promised if she would do so, that the bank would immediately proceed to levy, by execution, the amount from Merrill. It denies that the bank ever directed or authorized its attorney to hold out any inducements to the complainant to confess the judgment, or to make any such persuasions and promises as are set forth in the bill. It denies that the complainant had any valid legal defence, and avers due and legal demand and notice. It denies that Merrill had, at any time, after the judgment, unincumbered property whereon execution could have been levied, and out of which the judgment could have been satisfied. It denies negligence in recovering the money from Merrill, and indulgence to him without the knowledge and concurrence of the complainant. It avers that the bank offered to assign to her the judgment against Merrill, before he left the district, which she refused to accept.

The evidence consists of the answer of the bank, and the depositions of Daniel Renner, David English, James A. Magruder, G. Cloud, and E. Riggs, all taken on the part of the complainant.

Daniel Renner testifies, that before Merrill left the district, he, at several times, at the complainant's request, applied to the board of directors, of whom he was one, to issue execution against Merrill. That no answer was given by the board, or, if any, it was to this effect, that they were not bound to press Merrill; that the complainant, if she pleased, could pay the judgment, and could then adopt such course as she pleased.

James A. Magruder testifies, that, according to the best of his knowledge and belief, Mr. Wiley was the attorney of the bank at the time of the confession of judgment, and that it was then known to the bank, that many suits against indorsers for trial at that term, were in jeopardy in consequence of the then late decision of the court, as to the insufficiency of the demand and notice on the 4th instead of the 3d day of grace. That he understood from Mr. Wiley that he was requested by the bank, or some of its officers, to adjust all such cases, and get judgments confessed by the parties, so as to avoid such defences being made by the indorsers. That he, Magruder, was requested by Mr. Wiley, to call on several of the indorsers, and among others, on the complainant, with a view to make such adjustment; and did advise her to see Mr. Wiley, who was friendly to her, and would not advise her to do any thing that was against her interest. That there was much apprehension among the banks, at that time, that defendants who were indorsers, would become acquainted with that deci-

sion of this court, and dispute their cases on that ground.

David English, cashier of the defendants' bank, testifies that the suit was in Mr Wiley's hands. He does not know whether the decision was before or after the judgment against the complainant, but that it alarmed the bank as to their cases against indorsers. He knew nothing of the supposed agreement

E. Riggs deposes, that he was one of the directors of the bank. That application was made, in behalf of the complainant, to the board, to call on Merrill for the debt, and to press him for payment. The reply of the board was, that Merrill was not then able to pay, but was about to remove where he would probably make money, and would be more able to pay; but that the complainant might, if she chose, pay the money to the bank, and have the judgment assigned to her; but the majority of the board did not feel themselves compelled to distress Merrill by complying with her request. One or two of the directors thought it ought to be done, but there was no division at the board. He did not know any thing of the supposed agreement, nor does he recollect that there was any defect in the manner or time of demand and notice as to this note.

G. Cloud deposes, in answer to leading interrogatories, that he recollects a conversation between the complainant and Mr. Wiley, on the subject of her confessing the judgment, and that he understood, from the conversation of both of them, that if she would agree and confess judgment, she was to be cleared, and the money to be made out of Merrill's property, as he (Mr. Wiley) said that he had ascertained that Merrill had property sufficient to satisfy the debt, that was clear of incumbrance, and that it was expressly on those conditions that she confessed judgment. That he heard the complainant tell Mr. Wiley, that he had promised her that if she would confess judgment on the note, it would be better for her, as he would have the execution levied on Merrill's property, and it would clear her from paying the debt, as Merrill had sufficient property that was clear of incumbrance. He (Wiley) admitted that he had told her so, and that the fault was not in him, but in the directors of the bank. He (Mr. Wiley) further said, that he did not think she was in danger of paying the debt, for he thought they would get it out of Merrill. He knows that Merrill had considerable property in possession, which he moved with him from Georgetown; but as to the title, he knows nothing further than that he heard Mr. Wiley say, that it was clear of incumbrance, and that he had sufficient to satisfy the judgment. He heard the complainant tell Mr. Wiley, she never would have confessed judgment if he had not told her that he would clear her, by instantly levying on Merrill's property, and that she verily believed that it was in his power to have execution issued at his will, which he admitted. That the reason assigned by Mr. Wiley for not carrying the agreement into effect, was, that the directors of the bank would not suffer the execution to issue, as they knew their debt to be safe, and did not wish to break up Merrill. That the complainant frequently applied to the directors of the bank, as well as to Mr. Wiley, to have execution issued before Merrill left Georgetown with his property. He (G. Cloud) frequently went to the bank, and to Mr. Wiley, upon this business for the complainant, but they would not suffer the execution to issue.

Mr. Coxe and Mr. Jones, for complainant. Mr Swann, for defendants.

THE COURT (CRANCH, Chief Judge, contra) decreed a perpetual injunction.

CRANCH, Chief Judge. The agreement (to levy execution upon the property of Merrill, immediately after the judgment), is averred in the bill, denied in the answer, and averred by G. Cloud in his deposition, to have been confessed by Mr. Wiley, the attorney-at-law of the defendant, since deceased. In general, if the material averment of the bill be positively denied by the answer, and be proved by one witness only, the court cannot decree against the answer. It is said to be only oath against oath, and there must be something to turn the scale. But slight circumstances of corroboration have been considered sufficient for that purpose.

The circumstances which are supposed to be sufficient to turn the scale in the present case are, 1st. That the answer of the bank is not on oath, but the bill is. 2d. That the complainant repeatedly urged the bank to issue the execution against Merrill. 3d. That Mr. Wiley was the attorney of the bank. 4th. That the bank knew that many suits against indorsers were, at that term, in jeopardy, in consequence of the then late decision of the court respecting what were since called the 4th day protests. 5th. That Mr. Wiley informed Mr. Magruder, that he was instructed by the bank to adjust all such cases, and get judgments confessed, so as to prevent such defences being made; and that Mr. Magruder was requested by Mr. Wiley, to call on several of the indorsers, and among others, the complainant, with a view to make such adjustment; and that he advised her to see Mr. Wiley, who, he assured her, was friendly to her, and would not advise her to do any thing against her interest. 6th. That there was much apprehension among the banks, at that time, that defendants who were indorsers, would become acquainted with the decision of the court, and dispute their cases on that ground.

1. I do not know that it has ever been decided that the affidavit of a complainant to an injunction-bill, gives any weight to his cause upon the final hearing. It is required only as the ground of injunction, and, I be-

lieve, is never considered as evidence at the hearing, although the answer may not be upon oath. The reason why an answer in chancery, is evidence, is, I apprehend, not merely because it is upon oath, but because the complainant has required the defendant to answer, and has thereby made him a witness, and is bound to receive his answer as true as to those facts which he has called upon him to answer, unless the complainant can prove it to be false. If a defendant's answer be not on oath, the plaintiff, if he wishes to avail himself of that circumstance, must except to the answer on that ground. If he does not except, but files a general replication, I apprehend the answer, so far as it is responsive to the allegations of the bill, is as valid evidence for the defendant, as if it had been upon oath. If he calls upon a corporation aggregate to answer, he must receive the answer in the only way in which such a corporation can answer, namely, by its common seal. In a moral view, perhaps, such an answer would not afford as strong a presumption of truth, as an answer upon oath, because it has not the same legal and religious sanction; but as it regards the complainant, it is to be taken as true, until disproved, because it is his own evidence, called for and produced by himself; and as such it must be regarded by the court. The answer, therefore, having denied the agreement alleged in the bill, it is incumbent upon the complainant in the present case, to prove it by at least one witness corroborated by other evidence.

2. The first circumstance supposed to corroborate the testimony of G. Cloud, is, that the complainant frequently urged the bank to issue the execution against Merrill. The witnesses who testify to that fact, do not say that she urged it on the ground of an agreement, or that she ever informed the bank of the agreement. Mr. English, the cashier, and Mr. Riggs, one of the directors, deny that they knew any thing of such an agreement. Mr. Renner, another of the directors, through whom the application of the complainant was made to the board, says nothing of the agreement, in his deposition taken by the complainant. Mr. Riggs says that the refusal to comply with the complainant's request, was by a majority of the board; that one or two of the directors were in favor of it. If that was the case, and there had been such an agreement, it is natural to suppose that it would have been urged as a reason, to induce the board to issue the execution against Merrill. If it was not urged, there is strong ground to infer that it did not exist. Mr. Renner, who made the application to the board, must have known it, if it existed; at least, it is strange if he did not. If there had been no such agreement, still it would have been natural and probable that the complainant would urge the bank to issue the execution against Merrill, as he was the principal debtor. Her

doing so, therefore, without any allusion whatever to such an agreement, does not necessarily raise an inference, that such an agreement existed; nor can it be considered, as a corroboration of G. Cloud's testimony, on that point; on the contrary, the inference is clearly the other way, and instead of corroborating his testimony, tends strongly to diminish its weight.

3. The circumstance of Mr. Wiley's being the attorney of the bank, can hardly be considered as corroborating the testimony of Mr. Cloud, because it is a fact not disputed. The fact to be corroborated, is the agreement.

4. It is supposed to be a corroborating circumstance, that at the time of the supposed agreement, the bank knew that many suits against indorsers were at that term, (the term in which the judgment was confessed, namely, December term, 1817,) in jeopardy, in consequence of the then supposed recent decision of the court, that the demand of payment of a note, on the day after the third day of grace, was insufficient to charge the indorser; and that Mr. Wiley was instructed by the bank to adjust such cases, and get confessions of judgment from indorsers, so as to prevent their making such defence; and that Mr. Magruder was requested by Mr. Wiley, to call on several of the indorsers, and among others the complainant, with a view to such adjustment, and that he advised her to see Mr. Wiley.

These facts depend upon the testimony of Mr. Magruder, who does not swear positively; he was sworn only to testify according to the best of his knowledge and belief; and it appears that he must have been mistaken as to dates, because the judgment against Mr. Garey was confessed in December term, 1817, and the decision of the court which caused this alarm to the banks was not until the 11th of June, 1818, in the case of Beeding v. Pic [Case No. 1,227]. All the supposed corroboration, therefore, arising from the alarm of the bank at that decision, fails, and leaves no consideration for such a contract as is supposed to have been made, nor any such motive for Mr. Magruder's calling on the complainant. I do not see, therefore, any evidence corroborating Mr. Cloud's testimony. That testimony being thus unsupported as to the main fact, could not, if it were in itself unexceptionable, prevail against the answer. But his deposition appears to be the testimony of a willing witness, answering to leading questions, without cross-examination, and his character wholly unknown to the court. It consists only of the confessions of Mr. Wiley, the attorney of the bank, in conversations with the complainant, at divers times, after the confession of the judgment. He has not stated any circumstances of time or place, when and where he heard those conversations, except that they were between the years 1814 and 1820. The conversation which he relies on, was evidently after the confession of

judgment, and after December term, 1817, and after the bank had refused to issue execution against Merrill. And he makes Mr. Wiley contradict himself, by admitting that it was in his power to have issued the execution at his will, and yet saying the fault was not in him, but in the directors of the bank; and assigning as a reason for not issuing it, that the directors would not suffer it to be issued. Mr. Wiley died early in 1819. For these reasons, I cannot say that the contract is sufficiently proved to authorize this court to deprive the bank of the benefit of its judgment at law, or that it is unconscientious in the bank to enforce it.

THE COURT, however, as before stated, decreed a perpetual injunction; and the decree was affirmed by the supreme court, 5 Pet. [30 U. S.] 99.[3]

[NOTE. Upon appeal by the Union Bank of Georgetown this decree was affirmed by the supreme court, Mr. Justice Thompson delivering the opinion, in which it was held that the agreement by plaintiffs' attorney to make the amount of the note from the drawer fell within the scope of his general authority, and was binding on the plaintiffs in this suit. The plaintiffs having failed to proceed by execution against the drawer of the note, and having suffered him to remove with his property out of the reach of process of execution, the decree perpetually enjoining proceedings on the judgment confessed by the administratrix was duly affirmed. 5 Pet. (30 U. S.) 99.]

GAREY v. UNION BANK OF GEORGETOWN. See Case No. 5,241a.

GARFIELD (CAIN v.). See Case No. 2,293.

GARITY v. OCEAN TOW BOAT CO. See Case No. 13,175.

[3] The fact that the judgment was confessed five months before the decision of this court, which was assigned as the motive for making the agreement with the complainant, did not appear in the transcript of the record sent to the supreme court.

